

# Amendments to the Sentencing Guidelines

## April 28, 2016

**Effective Date
November 1, 2016**

This compilation contains unofficial text of amendments to the sentencing guidelines, policy statements, and commentary submitted to Congress, and is provided only for the convenience of the user. Official text of the amendment can be found on the Commission's website at www.ussc.gov and will appear in a forthcoming edition of the *Federal Register*.

## TABLE OF CONTENTS

**AMENDMENT**                                                             **PAGE NO.**

1. COMPASSIONATE RELEASE ................................................................................... 1

2. ANIMAL FIGHTING ................................................................................................... 6

3. CHILD PORNOGRAPHY CIRCUIT CONFLICTS ...................................................... 9

4. IMMIGRATION ......................................................................................................... 23

5. CONDITIONS OF PROBATION AND SUPERVISED RELEASE .............................. 41

6. MISCELLANEOUS ................................................................................................... 60

The United States Sentencing Commission is an independent agency in the judicial branch of the United States Government. The Commission promulgates sentencing guidelines and policy statements for federal sentencing courts pursuant to 28 U.S.C. § 994(a). The Commission also periodically reviews and revises previously promulgated guidelines pursuant to 28 U.S.C. § 994(o) and generally submits guideline amendments to Congress pursuant to 28 U.S.C. § 994(p) not later than the first day of May each year. Absent action of Congress to the contrary, submitted amendments become effective by operation of law on the date specified by the Commission (generally November 1 of the year in which the amendments are submitted to Congress).

The Commission specified an effective date of **November 1, 2016** for the amendments listed above and included in this compilation.

# 2016 AMENDMENTS TO THE SENTENCING GUIDELINES, POLICY STATEMENTS, AND OFFICIAL COMMENTARY

**1.   COMPASSIONATE RELEASE**

**Reason for Amendment:** *This amendment is a result of the Commission's review of the policy statement pertaining to "compassionate release" at §1B1.13 (Reduction in Term of Imprisonment as a Result of Motion by Director of Bureau of Prisons). The amendment broadens certain eligibility criteria and encourages the Director of the Bureau of Prisons to file a motion for compassionate release when "extraordinary and compelling reasons" exist.*

*Section 3582(c)(1)(A) of title 18, United States Code, authorizes a federal court, upon motion of the Director of the Bureau of Prisons, to reduce the term of imprisonment of a defendant if "extraordinary and compelling reasons" warrant such a reduction or the defendant is at least 70 years of age and meets certain other criteria. Such a reduction must be consistent with applicable policy statements issued by the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A); see also 28 U.S.C. §§ 992(a)(2) (stating that the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[] . . . 3582(c) of title 18"); and 994(t) (stating that the Commission, in promulgating any such policy statements, "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). In turn, the Commission promulgated the policy statement at §1B1.13, which defines "extraordinary and compelling reasons" for compassionate release.*

*The Bureau of Prisons has developed its own criteria for the implementation of section 3582(c)(1)(A). See U.S. Department of Justice, Federal Bureau of Prisons, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g) (Program Statement 5050.49, CN-1). Under its program statement, a sentence reduction may be based on the defendant's medical circumstances (e.g., a terminal or debilitating medical condition; see 5050.49(3)(a)–(b)) or on certain non-medical circumstances (e.g., an elderly defendant, the death or incapacitation of the family member caregiver of an inmate's minor child, or the incapacitation of the defendant's spouse or registered partner when the inmate would be the only available caregiver; see 5050.49(4),(5),(6)).*

*The Commission has conducted an in-depth review of this topic, including consideration of Bureau of Prisons data documenting lengthy review of compassionate release applications and low approval rates, as well as two reports issued by the Department of Justice Office of the Inspector General that are critical of the Bureau of Prisons' implementation of its compassionate release program. See U.S. Department of Justice, Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program, I-2013-006 (April 2013); U.S. Department of Justice, Office of the Inspector General, The Impact of the Aging Inmate Population on the Federal Bureau of Prisons, E-15-05 (May 2015). In February 2016, the Commission held a public hearing on compassionate release and received testimony from witnesses and experts about the need to broaden the criteria for eligibility, to add guidance to the medical criteria, and to remove other administrative hurdles that limit the availability of compassionate release for otherwise eligible defendants.*

*The amendment revises §1B1.13 in several ways. First, the amendment broadens the Commission's guidance on what should be considered "extraordinary and compelling reasons" for compassionate release. It provides four categories of criteria: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons."*

April 28, 2016 | 1

*The "Medical Condition of the Defendant" category has two prongs: one for defendants with terminal illness, and one that applies to defendants with a debilitating condition. For the first subcategory, the amendment clarifies that terminal illness means "a serious and advanced illness with an end of life trajectory," and it explicitly states that a "specific prognosis of life expectancy (<u>i.e.</u> a probability of death within a specific time period) is not required." These changes respond to testimony and public comment on the challenges associated with diagnosing terminal illness. In particular, while an end-of-life trajectory may be determined by medical professionals with some certainty, it is extremely difficult to determine death within a specific time period. For that reason, the Commission concluded that requiring a specified prognosis (such as the 18-month prognosis in the Bureau of Prisons' program statement) is unnecessarily restrictive both in terms of the administrative review and the scope of eligibility for compassionate release applications. For added clarity, the amendment also provides a non-exhaustive list of illnesses that may qualify as a terminal illness.*

*For the non-terminal medical category, the amendment provides three broad criteria to include defendants who are (i) suffering from a serious condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating health because of the aging process, for whom the medical condition substantially diminishes the defendant's ability to provide self-care within a correctional facility and from which he or she is not expected to recover. The primary change to this category is the addition of prong (II) regarding a serious functional or cognitive impairment. This additional prong is intended to include a wide variety of permanent, serious impairments and disabilities, whether functional or cognitive, that make life in prison overly difficult for certain inmates.*

*The amendment also adds an age-based category ("Age of the Defendant") for eligibility in §1B1.13. This new category would apply if the defendant (i) is at least 65 years old, (ii) is experiencing a serious deterioration in health because of the aging process, and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment (whichever is less). The age-based category resembles criteria in the Bureau of Prisons' program statement, but adds a limitation that the defendant must be experiencing seriously deteriorating health because of the aging process. The amendment also clarifies that the time-served aspect should be applied with regard to "whichever is less," an important distinction from the Bureau of Prisons' criteria, which has limited application to only those elderly offenders serving significant terms of imprisonment. The Commission determined that 65 years should be the age for eligibility under the age-based category after considering the Commission's recidivism research, which finds that inmates aged 65 years and older exhibit a very low rate of recidivism (13.3%) as compared to other age groups. The Commission expects that the broadening of the medical conditions categories, cited above, will lead to increased eligibility for inmates who suffer from certain conditions or impairments, and who experience a diminished ability to provide self-care in prison, regardless of their age.*

*The amendment also includes a "Family Circumstances" category for eligibility that applies to (i) the death or incapacitation of the caregiver of the defendant's minor child, or (ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver. The amendment deletes the requirement under prong (i) regarding the death or incapacitation of the "defendant's only family member" caregiver, given the possibility that the existing caregiver may not be of family relation. The Commission also added prong (ii), which makes this category of criteria consistent with similar considerations in the Bureau of Prisons' program statement.*

*Second, the amendment updates the Commentary in §1B1.13 to provide that an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction. The Commission heard from stakeholders and medical experts that the corresponding limitation in the Bureau of Prisons' program statement ignores the often precipitous decline in health or circumstances that can occur after imprisonment. The Commission determined that potential*

*foreseeability at the time of sentencing should not automatically preclude the defendant's eligibility for early release under §1B1.13.*

*Finally, the amendment adds a new application note that encourages the Director of the Bureau of Prisons to file a motion under 18 U.S.C. § 3582(c)(1)(A) if the defendant meets any of the circumstances listed as "extraordinary and compelling reasons" in §1B1.13. The Commission heard testimony and received public comment concerning the inefficiencies that exist within the Bureau of Prisons' administrative review of compassionate release applications, which can delay or deny release, even in cases where the applicant appears to meet the criteria for eligibility. While only the Director of the Bureau of Prisons has the statutory authority to file a motion for compassionate release, the Commission finds that "the court is in a unique position to assess whether the circumstances exist, and whether a reduction is warranted (and, if so, the amount of reduction), including the factors set forth 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." The Commission's policy statement is not legally binding on the Bureau of Prisons and does not confer any rights on the defendant, but the new commentary is intended to encourage the Director of the Bureau of Prisons to exercise his or her authority to file a motion under section 3582(c)(1)(A) when the criteria in this policy statement are met.*

*The amendment also adds to the Background that the Commission's general policy-making authority at 28 U.S.C. § 994(a)(2) serves as an additional basis for this and other guidance set forth in §1B1.13, and the amendment changes the title of the policy statement. These changes are clerical.*

**Amendment:**

**§1B1.13.   Reduction in Term of Imprisonment** ~~as a Result of Motion by Director of Bureau of Prisons Under 18 U.S.C. § 3582(c)(1)(A)~~ **(Policy Statement)**

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)   (A)   extraordinary and compelling reasons warrant the reduction; or

(B)   the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2)   the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)   the reduction is consistent with this policy statement.

*Commentary*

*Application Notes:*

1.   ~~*Application of Subdivision (1)(A).*~~

April 28, 2016 | 3

(A) Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the ~~following circumstances:~~ set forth below:

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a ~~permanent~~ serious physical or medical condition, ~~or~~

        (II) suffering from a serious functional or cognitive impairment, or

        (III) ~~is~~ experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and ~~for which conventional treatment promises no substantial improvement~~ from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    ~~(iii)~~(i) The death or incapacitation of the ~~defendant's only family member~~ caregiver of ~~capable of caring for~~ the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) ~~(iv)~~ Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions ~~(i), (ii), and (iii)~~ (A) through (C).

2. Foreseeability of Extraordinary and Compelling Reasons.—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. ~~(B)~~ Rehabilitation of the Defendant.—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of ~~subdivision (1)(A)~~ this policy statement.

4.  *Motion by the Director of the Bureau of Prisons.*—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

    This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law.

~~2~~5. *Application of Subdivision (3).*—Any reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) and (2) is consistent with this policy statement.

*Background*: The Commission is required by 28 U.S.C. § 994(a)(2) to develop general policy statements regarding application of the guidelines or other aspects of sentencing that in the view of the Commission would further the purposes of sentencing (18 U.S.C. § 3553(a)(2)), including, among other things, the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c). In doing so, the Commission is authorized by 28 U.S.C. § 994(t) to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." This policy statement implements 28 U.S.C. § 994(a)(2) and (t).

## 2. ANIMAL FIGHTING

**Reason for Amendment:** *This amendment responds to two legislative changes to the Animal Welfare Act (the "Act") (codified at 7 U.S.C. § 2156) made by Congress in 2008 and 2014. First, in 2008, Congress amended the Act to increase the maximum term of imprisonment for offenses involving an animal fighting venture from three years to five years. See Food, Conservation, and Energy Act of 2008, Pub. L. No. 110–234, § 14207(b), 122 Stat. 1461, 1462 (May 22, 2008). Second, in 2014, Congress again amended the Act to create two new offenses – the offense of attending an animal fight and the offense of causing an individual under the age of 16 to attend an animal fight, with respective statutory maximum terms of imprisonment of one and three years. See Agricultural Act of 2014, Pub. L. 113–79, § 12308, 128 Stat. 990, 990 (Feb. 7, 2014).*

*The amendment makes several changes to §2E3.1 (Gambling Offenses, Animal Fighting Offenses) to account for these legislative actions. The amendment is informed by extensive public comment, recent case law, and analysis of Commission data regarding the current penalties for animal fighting offenses.*

### Higher Penalties for Animal Fighting Venture Offenses

*First, the amendment increases the base offense level for offenses involving an animal fighting venture from 10 to 16. This change reflects the increase in the statutory maximum penalty from three to five years for offenses prohibited under 7 U.S.C. § 2156(a)–(e). See 18 U.S.C. § 49 (containing the criminal penalties for violations of section 2156). The Commission also determined that the increased base offense level better accounts for the cruelty and violence that is characteristic of these crimes, as reflected in the extensive public comment and testimony noting that a defeated animal is often severely injured or killed during or after a fight and that the animals used in these crimes are commonly exposed to inhumane living conditions or other forms of neglect.*

*In making this change, the Commission was also informed by data evidencing a high percentage of above range sentences in these cases. During fiscal years 2011 through 2014, almost one-third (31.0%) of the seventy-four offenders who received the base offense level of 10 under §2E3.1 received an above range sentence, compared to a national above range rate of 2.0 percent for all offenders. For those animal fighting offenders sentenced above the range, the average extent of the upward departure was more than twice the length of imprisonment at the high end of the guideline range, resulting in an average sentence of 18 months (and a median sentence of 16 months). Comparably, the amended base offense level will result in a guideline range of 12 to 18 months for the typical animal fighting venture offender who is in Criminal History Category I and receives a three-level reduction for acceptance of responsibility under §3E1.1 (Acceptance of Responsibility). Additionally, for offenders in the higher criminal history categories, the guideline range at base offense level 16 allows for applicable Chapter Three increases while remaining within the statutory maximum.*

### New Offenses Relating to Attending an Animal Fighting Venture

*The amendment also establishes a base offense level of 10 in §2E3.1 if the defendant was convicted under section 2156(a)(2)(B) for causing an individual under 16 to attend an animal fighting venture. The Commission believes this level of punishment best reflects Congress's intent in creating this new crime. A base offense level of 10 for this new offense will result in a guideline range (before acceptance of responsibility) of 6 to 12 months of imprisonment for offenders in Criminal History Category I, while allowing for a guideline range approaching the three-year statutory maximum for offenders in higher criminal history categories. The Commission also noted that assigning a base offense level of 10 is consistent with the policy decision made by the Commission when it assigned a base offense level of 10 to*

an animal fighting crime in 2008, which, at that time, also had a three-year statutory maximum penalty. <u>See</u> USSG App. C, amend. 721 (effective November 1, 2008).

Lastly, the amendment establishes a base offense level of 6 for the new class A misdemeanor of attending an animal fighting venture prohibited by section 2156(a)(2)(A) by including only the felony provisions of 7 U.S.C. §2156 in the Appendix A reference to §2E3.1. Consistent with other Class A misdemeanor offenses, this base offense level is established through application of §2X5.2 (Class A Misdemeanors (Not Covered by Another Specific Offense Guideline)).

   <u>Departure Provision</u>

The amendment also revises and expands the existing upward departure language in two ways.

First, the amendment clarifies the circumstances in which an upward departure for exceptional cruelty may be warranted. As reflected in the revised departure provision, the base offense levels provided for animal fighting ventures in subsections (a)(1) and (a)(3) reflect the fact that an animal fighting venture involves one or more violent fights between animals and that a defeated animal often is severely injured in the fight, dies as a result of the fight, or is killed afterward. The Commission heard testimony that in a typical dog fight, dogs puncture and tear at each other, until one animal is too injured to continue, and during a cock fight, roosters strike each other with their beaks and with sharp blades that have been strapped to their legs, suffering punctured lungs, broken bones, and pierced eyes. Nonetheless, as informed by public comment and testimony, the Commission's study indicates that some animal fighting offenses involve extraordinary cruelty to an animal beyond that which is common to such crimes, such as killing an animal in a way that prolongs the suffering of the animal. The Commission determined that such extraordinary cruelty may fall outside the heartland of conduct encompassed by the base offense level for animal fighting ventures and, therefore, that an upward departure may be warranted in those cases.

Similarly, the amendment expands the existing departure provision to include offenses involving animal fighting on an exceptional scale (such as offenses involving an unusually large number of animals) as another example of conduct that may warrant an upward departure. As with the example of extraordinary cruelty, the Commission determined that the base offense level under the revised guideline may understate the seriousness of the offense in those cases.

**Amendment:**

**§2E3.1.**   **<u>Gambling Offenses; Animal Fighting Offenses</u>**

  (a)  Base Offense Level: (Apply the greatest)

    (1)  **16**, if the offense involved an animal fighting venture, except as provided in subdivision (3) below;

    (~~1~~2)  **12**, if the offense was (A) engaging in a gambling business; (B) transmission of wagering information; or (C) committed as part of, or to facilitate, a commercial gambling operation; ~~or~~

    (2)  ~~**10**, if the offense involved an animal fighting venture; or~~

    (3)  **10**, if the defendant was convicted under 7 U.S.C. § 2156(a)(2)(B); or

April 28, 2016  |  7

  (~~3~~4) **6**, otherwise.

<em>Commentary</em>

<u>Statutory Provisions</u>: 7 U.S.C. § 2156 (felony provisions only); 15 U.S.C. §§ 1172-1175; 18 U.S.C. §§ 1082, 1301-1304, 1306, 1511, 1953, 1955; 31 U.S.C. § 5363. For additional statutory provision(s), see Appendix A (Statutory Index).

<u>Application Notes</u>:

1.  <u>Definition</u>.—For purposes of this guideline~~:~~, "~~Animal~~animal fighting venture" has the meaning given that term in 7 U.S.C. § 2156(g).

2.  <u>Upward Departure Provision</u>.—The base offense levels provided for animal fighting ventures in subsection (a)(1) and (a)(3) reflect that an animal fighting venture involves one or more violent fights between animals and that a defeated animal often is severely injured in the fight, dies as a result of the fight, or is killed afterward. Nonetheless, there may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense. In such a case, an upward departure may be warranted. For example, an upward departure may be warranted if (A) ~~If~~ the offense involved extraordinary cruelty to an animal ~~that resulted in, for example, maiming or death to an animal, an upward departure may be warranted.~~ beyond the violence inherent in such a venture (such as by killing an animal in a way that prolongs the suffering of the animal); or (B) the offense involved animal fighting on an exceptional scale (such as an offense involving an unusually large number of animals).

* * *

# APPENDIX A - STATUTORY INDEX

* * *

7 U.S.C. § 2156 (felony provisions only)   2E3.1