PHILLIP A. TALBERT
United States Attorney
ROSANNE L. RUST
CHRISTINA McCALL
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JAZIZ CEA, <br><br> Defendant. | CASE NO. 2:19-CR-00126 TLN <br><br> **UNITED STATES' RESPONSE TO DEFENDANT'S FORMAL OBJECTIONS TO THE FINAL PRESENTENCE INVESTIGATION REPORT** |

## I.   INTRODUCTION

The United States hereby submits its response to defendant Jaziz Cea's formal objections (ECF No. 173). Defendant's objections can be summarized as follows: (1) the defendant claims that the content described in paragraph 42 of the final presentence investigation report (PSR) does not describe sadistic conduct; (2) the defendant objects to the 2-level vulnerable victim enhancement in PSR paragraph 45, and the resulting higher Guidelines' range; (3) the defendant claims he cannot pay the special assessment under the Justice for Victims of Trafficking Act (JVTA) (18 U.S.C. § 3014) because he is indigent; (4) the defendant claims the Amy, Vicky and Andy Child Pornography Victim Assistance Act does not apply to restitution in this case since most of his conduct pre-dates the Act; and (5) the defendant objects to Special Condition #17, arguing it violates the First Amendment [note: this is actually Special Condition #15 in the PSR].

For the reasons detailed below, the United States disagrees with the defendant's objections (1) (paragraph 42), (3) (indigency for the JVTA assessment), (4) (application of the Amy, Vicky and Andy Act to restitution in his case), and (5) (Special Condition #15). The government agrees, however, with objection (2) (vulnerable victim enhancement). Therefore, with the exception of the vulnerable victim enhancement which Probation applied in the final PSR, and the resulting Guidelines' imprisonment range, the United States respectfully requests that the Court reject the defendant's formal objections and otherwise adopt the PSR. Here, the Court should find that the video described in paragraph 42 of the PSR depicts sadistic conduct under applicable Ninth Circuit case law. Under the circumstances of this case, the Court should also find that the defendant must pay the mandatory $15,000 JVTA assessment since he has not met his burden under 18 U.S.C. § 3014 in demonstrating that he is indigent, and therefore, cannot pay. The Court should further find that Special Condition number 15, limiting the defendant's access to sexually explicit content, does not violate the defendant's First Amendment rights. The Ninth Circuit has previously considered, and rejected, a very similar argument with respect to a nearly identical condition. Here, the Court should follow suit, and find the defendant's challenge lacking.

## II.   ARGUMENT

### A.   Paragraph 42 describes sadistic conduct and other files in the case portray sexual abuse / exploitation of toddlers.

Paragraph 42 of the PSR applies the 4-level specific offense characteristic that the parties agreed to pursuant to the plea agreement (ECF No. 148 at 10-11), and describes sadistic conduct from one of the defendant's child sex abuse videos under the test set out in *United States v. Rearden*, 349 F.3d 608 (9th Cir. 2003). In *Rearden*, the Ninth Circuit held that the district court properly applied this specific offense characteristic because it found that the images "depicted subjection of a child to a sexual act that would have to be painful, and thus sadistic." *Rearden*, 349 F.3d at 615-16. The video described in paragraph 42 fits this definition. As noted by the filename, the video shows a young, prepubescent girl, likely 9 years old, who is being anally raped by an adult male while he has her on her hands and knees. Such conduct, especially given the victim's diminutive size, is undeniably painful, and therefore, sadistic. *See also United States v. Bender*, 290 F.3d 1279, 1285-86 (11th Cir. 2002) (holding that child

2

sex abuse material showing an adult male anally penetrating a young child depicted the "subjection of a young child to a sexual act that would have been painful," by nature of the sex act alone, making that conduct sadistic for purposes of the enhancement under U.S.S.G. § 2G2.2).

Given that the video in paragraph 42 meets the legal definition of sadistic, the Court should deny the defendant's formal objection to this paragraph.[1]

B. **The parties agree that the vulnerable victim enhancement found in U.S.S.G. § 3A1.1(b)(1) does not apply in this case, and therefore, the correct guidelines' range is lower than that found by Probation.**

The United States and the defendant agreed to stipulated guidelines in the parties' plea agreement (ECF No. 148). The Chapter 3 adjustment for a vulnerable victim under U.S.S.G. § 3A1.1(b)(1) applied by Probation in the PSR was not one of them. PSR ¶ 45. Consistent with the plea agreement, the United States will not put on evidence in support of that enhancement. Instead, the parties agree that that enhancement does not apply in this particular case, and consequently, the total adjusted offense level in Paragraph 52 should be 34, not 36. Furthermore, because the defendant's criminal history category is I, the parties agree that the defendant's advisory guidelines range of imprisonment is 151 to 188 months. ECF No. 173 at 4.

C. **The defendant is not indigent for purposes of applying the JVTA special assessment, and therefore, he must pay the recommended $15,000.**

First, the defendant has not shown that he is unable to pay part of the recommended JVTA at the time of sentencing. As noted in the PSR, the defendant has sufficient assets to not only pay the recommended $5,000 in restitution to one of his victims (PSR ¶ 126), but he also has sufficient funds to pay a good portion of the applicable $15,000 JVTA assessment.[2] As Probation notes in PSR paragraph 107, the "defendant has a bank account with a total balance of $10,000;" the defendant also "has no outstanding bank loans and has no credit card debt." Furthermore, the defendant "has no liens, [or]

---

[1] Even if the Court disagrees, there are other videos the defendant admitted to possessing that support the application of this offense characteristic. For example, the defendant bought a video from Welcome to Video that showed a young toddler who was suspended from a hanging rod via duct tape by both ankles, who was forced to orally copulate an adult. PSR ¶ 18. That video goes on to depict other horrific abuse, which undeniably is sadistic. *Id.*

[2] Despite the defendant's argument that the recommended restitution will drain all of his current assets (ECF No. 73 at 3, lines 16-19), the parties and Probation agree that the Court should order $5,000 in restitution. PSR ¶¶ 126, 127. That leaves additional funds that can be applied to the JVTA.

3

judgments". PSR ¶ 108. Therefore, he is capable of paying $5,000 immediately toward the $15,000 JVTA assessment.

Concerning the remaining $10,000, defense counsel's arguments regarding what constitutes indigency for the JVTA are contrary to precedent in multiple circuits. ECF No. 173 at 3-4. For example, in *United States v. Shepherd*, 922 F.3d 753 (6th Cir. 2019), the Sixth Circuit, collecting cases on this issue from several sister circuits, held that: (1) receiving court-appointed counsel does not equate to indigency; and (2) courts may consider future earnings in assessing indigency. *Id.* at 757-59. The *Shepard* court also found that the district court did not err in finding a defendant non-indigent despite his limited earning potential, negative net worth of $1,739, and $55,000 in restitution and child support obligations. *Id.* at 756, 760. Other published cases evaluating the applicability of the JVTA special assessment hold that it is appropriately applied where a defendant fails to meet his burden to show that he cannot pay that amount in the future. *See United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018); *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017). An able-bodied person can pay down the assessment in installments over a period of years. *See United States v. Strange*, 692 F. App'x 346, 349 (9th Cir. 2017) (unpublished).

Here, the defendant will be able to earn money while in the custody of the Bureau of Prisons. Defendants sentenced to federal custody are generally required to work if medically able. *See* https://www.bop.gov/inmates/custody_and_care/work_programs.jsp; https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp. Federal inmates are further estimated to earn between $10 and $25 per month. *See id.*; https://www.prisonerresource.com/work-assignment/inmate-work-assignments-federal-prison/. In this case, the defendant has not presented any evidence that he is unable to earn money while incarcerated. He is in good physical health with no known current physical disabilities. *See* PSR ¶¶ 85-86. The defendant will also have access to mental health treatment while incarcerated, including any necessary medications he needs. *See* https://www.bop.gov/inmates/custody_and_care/mental_health.jsp. As evidenced by his prior military service, the defendant is capable of executing various job assignments. PSR ¶ 110. Thus, if sentenced to the 240-month sentence recommended by the United States (or even to the 14-year sentence recommended by the defendant), the defendant should be able to work and thus, afford payment of a

very substantial portion of the remaining $10,000 JVTA assessment before he is released from prison. *See United States v. Haggard*, 41 F.3d 1320, 1329 (9th Cir. 1994) (upholding a fine where defendant made no showing of future inability to pay and could earn money while incarcerated).

The defendant will remain capable of earning money after his release from custody as well. Although the defendant will likely be unable to work in certain fields due to the nature of his conviction, the defendant has a high school diploma, PSR ¶ 104, and will have access to vocational training through the Bureau of Prisons. *See* https://www.bop.gov/resources/news/20140613_program.jsp. The defendant will also continue to receive any needed mental health treatment on supervision. *See* PSR, Special Condition No. 10 at 33.

Because the defendant has not met his burden to show that he will be unable to pay the $15,000 special assessment, the United States agrees with Probation that it should be imposed. PSR ¶¶ 110, 122.

**D.   The Amy, Vicky and Andy Act Applies to the Possession Count, and the parties agree the victim portrayed in the Vicky Series Should Receive a Restitution Award of $5,000.**

At the time of the defendant's arrest in February of 2019, he had a video showing the sexual abuse of a prepubescent minor known as Vicky saved in the iNotes portion of his iPhone. Defendant also uploaded a video showing the abuse of the victim known as Vicky to YouTube. ECF No. 148-1, Factual Basis at A-2; PSR ¶¶ 15-16. Because the defendant knowingly possessed a depiction of the victim known as Vicky's abuse when he was arrested in February of 2019, and the Amy, Vicky and Andy Act became law on December 7, 2018, there is no *ex post facto* issue with imposing a $5,000 restitution order to the victim known as Vicky[3] under 18 U.S.C. § 2259 in this case.

**E.   This Court should impose Special Condition number 15[4] because it will assist Probation in supervising the defendant and it does not violate the First Amendment.**

The defendant has objected to the application of this special condition limiting his access to sexually explicit material on First Amendment grounds. In *United States v. Troy L. Cardoso*, 698 Fed.

---

[3] Three other victims submitted restitution requests in this case, but withdrew them after government counsel contacted the attorneys for the victims to explain that they were victims of Cea's uncharged conduct (the Welcome to Video downloads), and thus, not entitled to restitution in this case.

[4] The defendant challenges Special Condition 17 in his informal and formal objections. ECF No. 173 at 5. However, based on the substance of his argument, it appears that he is actually contesting Special Condition 15, which restricts the defendant's access to materials involving sexually explicit conduct.

Appx. 514 (Oct. 4, 2017), the Ninth Circuit previously considered, and rejected, a similar challenge to a nearly identical condition imposed in this district. Pursuant to *Cardoso*, the Court should deny the defendant's objection to his condition in this case. As noted by Probation, this condition will assist the defendant on supervision and it is warranted given the defendant's conduct in this case, in addition to his history and characteristics. *See* PSR at 30-31 & ECF No. 170-4 at 3.

### III.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny all of the defendant's objections except his challenge to the vulnerable victim enhancement, and the resulting higher total adjusted offense level.

Respectfully submitted,

DATED:  January 20, 2022

PHILLIP A. TALBERT
United States Attorney

*/s/ Rosanne L. Rust*
ROSANNE L. RUST
CHRISTINA McCALL
Assistant United States Attorneys